IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **GUVERA IP PTY, LTD,**<br><br>    Plaintiff,<br><br>vs.<br><br>**PANDORA,**<br><br>    Defendants. | Civil Action No.: 6:21-cv-00946<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Guvera IP Pty Ltd ("Guvera" or "Plaintiff") hereby brings this action for patent infringement against Pandora ("Pandora" or "Defendant") alleging infringement of the following validly issued patents (the "Patents-in-Suit"): U.S. Patent No. U.S. Patent No. 8,977,633, titled "System and method for generating a pool of matched content" (the "'633 Patent"), attached hereto as Exhibit A and U.S. Patent No. 8,712,845 (the "'845 patent") titled "Advertising system and method" attached as Exhibit B

### Nature of the Action

Guvera streams music and entertainment free of charge to the user. Guvera offers this service on the strength of the Guvera source code.

Guvera invested over $20 million writing source code that allows Guvera to recognize specific characteristics of the Guvera user. With an in-depth knowledge of the individual user, Guvera matches advertisements with music and entertainment requested by this user whom Guvera knows.

Guvera has licensed the technology. For example, the Indian streaming service Hungama

1

is authorized to use the Guvera method. There are other companies—including a large, well-known American technology company—who have licensed and are authorized to practice the Guvera method. Hungama is emphasized here because Hungama is willing to offer evidence in this proceeding regarding the long-felt need, commercial success, and novelty of this invention.

## Parties

1. Guvera IP Pty Ltd is an Australian corporation with its principal place of business at Unit 3, 106 Scarborough St, Southport 4215, Australia.

2. Pandora is a company organized under the laws of the State of Delaware with its principal place of business at 2100 Franklin St., Suite 700, Oakland, California 94612.

## Jurisdiction and Venue

3. This action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court may exercise personal jurisdiction over Pandora, which conducts continuous and systematic business in this District. Pandora Media, LLC maintains offices in this District at 3601 S. Congress Ave., K100, Austin, Texas 78704.

6. This patent-infringement case arises directly from Pandora's continuous and systematic activity in this District. In short, this Court's exercise of jurisdiction over Pandora would be consistent with traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400(b).

## Infringement of U.S. Patent No. 8,977,633

8. Guvera hereby realleges and incorporates by reference, as if fully set forth herein,

the allegations of paragraphs 1-7 above.

9. Guvera is the exclusive owner of U.S. Patent No. 8,977,633 (the "'633 patent") attached as Exhibit A.

10. The '633 patent is valid and enforceable.

11. Claim 1 of the '633 is directed to patentable subject matter: an improved process of matching digital content, advertisements, and users based on a personality recognition technique.

12. Specifically, claim 1 of the '633 patent requires the following set of steps:

> wherein each content profile identifier of each piece of electronic content is given a weighting factor or ranking and a quantitative value is given to each piece of electronic content in relation to each content profile identifier,
> wherein the quantitative value together with the weighting factor or ranking of each content profile identifier is used to calculate a value, or set of values related to each content profile identifier, for each piece of electronic content;
> wherein the value, or set of values, is used *to calculate a degree of association of the representative electronic content pieces with electronic content pieces by using the variation of the representative electronic content pieces compared to the electronic content pieces and including an electronic content piece in the matched content pool based on the degree of association* . . . .

('633, col. 13:44-60 (emphasis added).)

13. Claim 1 calculates a "degree of association" to reflect a depth to the understanding the Guvera method has of the user. The Guvera source code reflecting claim 1's calculation of a "degree of association" is available for inspection by contacting undersigned counsel.

14. Claims 2 through 15 depend on the limitations of claim 1, including calculating the "degree of association." Claims 1 through 15 teach one of ordinary skill in the art how to improve prior art on-line advertising methods through, *inter alia*, calculation of the "degree of association."

15. Claim 2: "A computer implemented method as claimed in claim 1, wherein the quantitative value is a numerical value." Claim 2's calculation of a "degree of association" uses a

numerical value. Guvera source code reflecting claim 2's calculation of a "degree of association" is available for inspection.

16. Claim 3: "A computer implemented method as claimed in claim 1, wherein the quantitative value is or includes non-numerical contextual data. Guvera source code reflecting claim 1's calculation of a "degree of association" is available for inspection.

17. Claim 7: "A computer implemented method as claimed in claim 1, wherein the content profile identifiers are reactive in real-time." Guvera source code reflecting claim 7's "reactive content profile identifiers" is available for inspection.

18. Claim 9: "A computer implemented method as claimed in claim 1, wherein a content matching engine searches every piece of electronic content in the content database."

19. Claim 10: "A computer implemented method as claimed in claim 1, wherein a content matching engine searches electronic content pieces based on chosen parameters related to the content profile identifiers." Guvera source code reflecting claim 9's and claim 10's "content matching engine" is available for inspection.

20. Claim 16: "A computer implemented content matching system for generating a pool of matched content pieces from an available pool of content pieces based on a selected sample, the system including: at least one computer having one or more computer processors communicatively coupled to at least one or more computer-readable data storage devices at least one consumer database containing a plurality of consumer profiles with consumer preference identifying data, the at least one consumer database stored on a computer-readable data storage device, at least one brand database containing details of brand clients, each having one or more branding parameters stored on a computer-readable data storage device, at least one content database containing a plurality of pieces of electronic content provided by at least one content provider with each piece

4

of electronic content having one or more content profile identifiers stored on a computer-readable data storage device, selecting, by a brand client, a plurality of representative electronic content pieces based on one or more branding parameters of the brand client to convey a brand identity, testing the selected plurality of representative electronic content pieces by an administrator using a data processor against a set of constraints to establish that a first constraint is satisfied, the first constraint comprising any one or more of: determining an asset type for each of the representative electronic content pieces of the selected plurality, and determining that the asset types for the selected plurality includes a minimum number of asset types; determining an asset type for each of the representative electronic content pieces of the selected plurality, and determining that the selected plurality includes a minimum number of any one or more of performers, artists, publishers, producers, or albums for each asset type of the selected plurality; or determining that a particular asset type is included in the selected plurality, and determining that the selected plurality includes a minimum number of representative electronic content pieces having the particular asset type; and generating a pool of matched electronic content pieces by: selecting a plurality of electronic content pieces from the available pool based on comparing the one or more content profile identifiers of the representative electronic content pieces with one or more content profile identifiers of each content piece in the available pool of electronic content pieces to identify a set of matches, and including the set of matches in the matched electronic content pool only if a second constraint is satisfied, the second constraint comprising determining that the set of matches of electronic content pieces include a minimum number of pieces of content for each type of content, wherein each content profile identifier of each piece of electronic content is given a weighting factor or ranking and a quantitative value is given to each piece of electronic content in relation to each content profile identifier, *wherein the quantitative value together with the weighting factor*

*or ranking of each content profile identifier is used to calculate a value, or set of values related to each content profile identifier, for each piece of electronic content; wherein the value, or set of values, is used to calculate a degree of association of the representative electronic content pieces with electronic content pieces by using the variation of the representative electronic content pieces compared to the electronic content pieces and including an electronic content piece in the matched content pool based on the degree of association*; wherein a minimum number of electronic content pieces must be chosen in order to define the representative electronic content pieces prior to testing the representative electronic content pieces against the set of constraints. ('633, cols. 14:52-16:31 (emphasis added).)

21.     *See supra* ¶ 12 regarding source code embodying the claim 16 system calculating a "degree of association."

22.     The claims of the '633 patent teach how to match digital content with a particular user. For example, the claims contain two mandatory constraints that must be satisfied before the degree of association is calculated. Further, the claims teach one of ordinary skill in the art how to calculate the "degree of association."

23.     The patent examiner amended the claims of the '633 to put the claims in a condition to be allowed over the prior art content matching systems and added language to the claims teaching how to calculate a "degree of association."

24.     Pandora infringes claim 1 when Pandora delivers its streaming service free of charge to the user.  Pandora provides a consumer database with user profiles.  Pandora provides product suite sand advanced targeting capabilities that delivers ads to listeners when they're ready to engage, allowing customers to build personalized connections at scale.

25.     Pandora also provides a brand database required by claim 1.  Pandora provides

guided experiences with features designed for brands. Pandora shepherds listeners through the sights and sounds.

26. Pandora provides the content database of claim 1, including profile identifiers to each piece of digital content. Pandora provides guided experiences with features designed for brands. Pandora shepherds listeners through the sights and sounds.

27. Pandora tests a representative set of digital content that meets branding parameters in order to satisfy the first constraint of claim 1. Pandora and customers have employed a multi-faceted approach with targeting at the forefront. Pandora leverages an audience base of over 86 million unique listeners, creates a custom audience segment of a core demographic to ensure a campaign is optimized to reach only those most qualified.

28. Pandora generates a pool of matched content according to claim 1. Pandora provides hyper-personalized audio messages by leveraging rich listener data in real time. Intelligent ad technology optimizes various triggers such as location, weather and time-of-day to serve the right message to the right listener at the right time. This custom audio execution allows a scale of hundreds, thousands, and even millions of variations.

29. Pandora calculates the "degree of association" according to the teaching of claim 1. With 80 million monthly active listeners, and one of the largest logged-in users bases in the country, Pandora leverages data to deliver audio messages specifically to listeners, gender, age, location and other factors   Plaintiff incorporates paragraphs 24 through 29 in support of Plaintiff's allegation that Defendant calculates the "degree of association" according to the teaching of claim 1.

30. Pandora meets claim 1's requirement of a minimum number of pieces of content to define the "representative content" *before* the two constraints are satisfied. Pandora provides

custom-built audio messages captured listener attention across multiple platforms, creating a powerful ubiquitous approach and connecting customers with consumers wherever they were.

**Infringement of U.S. Patent No. 8,712,845**

31. Guvera hereby realleges and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1-7 above.

32. Guvera is the exclusive owner of U.S. Patent No. 8,712,845 (the "'845 patent") attached as Exhibit B.

33. The '845 patent is valid and enforceable.

34. Pandora provides a computer implemented advertising system as claimed in claim 1 including at least one consumer database electronically stored on a data storage device containing a plurality of consumer profiles with consumer preference identifying data. Pandora provides a product suites and advanced targeting capabilities.  Pandora delivers ads to listeners when they're ready to engage, allowing customers to build personalized connections at scale

35. Pandora provides at least one brand database electronically stored on a data storage device containing details of brand clients, each having one or more branding parameters, at least one content database electronically stored on a data storage device containing a plurality of pieces of content provided by at least one content provider with each piece of content having one or more content profile identifiers. Pandora provides guided experiences featuring inspired music and sounds shepherding listeners through sights and sounds for customers.

36. Pandora provides a content matching engine operating on a network of computers with access to the at least one electronically stored consumer, brand and content databases and which matches the branding parameters of the brand clients with one or more of pieces of content and with one or more of the consumer preference identifying data and provides the one or more

pieces of content to one or more consumers upon a consumer request, with corresponding advertising from at least one brand client identifying the brand client to the consumer, based on at least the matching at no cost to the consumer whilst charging an advertising fee to the brand client and paying a content provision fee to the content provider, the brand client charged the advertising fee each time the at least one consumer selects content associated with the brand client, a portion of the advertising fee is paid to the content provider as a license fee for the content.  Pandora provides sponsored listening campaigns to build a fresh, custom behavioral lookalike audience to target.  This advanced audience targeting allows customers to reach more unique listeners.  Pandora provides brand-positive sponsored listening experience incentivizing the audience to interact with video ads for at least 15 seconds in order to unlock uninterrupted listening.

37. The results of the matching are included on a results list presented to the at least one consumer in response to a search for content, wherein the results list includes a matched piece of content, and the matched piece of content is identified on the results list as associated with two or more different brand clients.  Pandora provides a multi-faceted approach with targeting.  Pandora leverages an audience base of over 86 million unique listeners and creates a custom audience segment for customers core demographic to optimize a campaign to reach only those most qualified.

38. The content matching engine produces a results interface for presenting the results list to the at least one consumer and wherein the results interface prompts the consumer to select a selected brand client from the two or more different brand clients in the results list, and wherein the content matching engine provides to the consumer, based on a selection of the selected brand client received from the consumer, the matched piece of content that is identified as associated with the selected brand client.  Pandora hyper-personalizes audio messages by leveraging rich

listener data in real time.  Pandora provides Intelligent ad technology that optimizes various triggers such as location, weather and time-of-day to serve the right message to the right listener at the right time.  This custom audio execution allows customers to scale to hundreds, thousands, and even millions of variations.

39. Pandora provides a communications system associated with one or more communications pathways to receive inbound requests from consumers and distribute content in electronic form to the consumer in response to a request.  With 80 million monthly active listeners, and one of the largest logged-in users bases in the country, Pandora leverages proprietary data to deliver audio messages specifically to listener based on gender, age, location and other demographics. This data-driven marketing approach allows customers to reach a precise audience. Pandora provides brand-positive sponsored listening, incentivizing audiences to interact in order to unlock one uninterrupted listening.

## Prayer for Relief

WHEREFORE, Guvera prays for the following relief against Pandora:

(a) Judgment that Pandora has directly infringed the '633 patent;

(b) Judgment that Pandora has directly infringed the '845 patent;

(c) A reasonable royalty;

(d) Pre-judgment interest and post-judgment interest at the maximum rate allowed by law;

(e) Post-judgment injunction; and

(f) Such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Guvera demands a trial by jury on all matters and issues so triable.

Respectfully Submitted,

Date: <u>September 12, 2021</u>     By:  <u>/s/Artoush Ohanian</u>
H. Artoush Ohanian
Texas Bar No. 24013260
artoush@ohanianip.com
OHANIANIP
604 West 13th Street
Austin, Texas 78701
(512) 298.2005 (telephone & facsimile)

*Counsel for Guvera IP Pty Ltd*